## ATTACHMENT B
## DEFENDANT'S OUTLINE OF THE CASE

Plaintiff has brought a medical malpractice claim against the United States of America under the Federal Tort Claims Act (the "FTCA") arising out of the medical treatment provided by doctors at the Veterans Administration Medical Center in Decatur, Georgia. The following is a factual summary of the case:

On January 2013, James Crow made his initial visit to the VA clinic and was seen by a primary care physician, Dr. Michael Streleckis. Amongst the issues identified at this visit was a need for consultation with a cardiologist to conduct a nuclear stress test. After Mr. Crow cancelled two appointments, he presented to the Atlanta VA Medical Center ("VAMC") in Decatur, Georgia, on April 1, 2013, where the stress test was performed. The stress test indicated abnormalities that merited a left heart catheterization, which was scheduled for April 8, 2013.

The catheterization was performed at the Atlanta VAMC on April 8, 2013, by VA cardiologists Dr. Bjoern Tennes and Dr. Peter Block. Based on the results of this test, the VA physicians placed Crow on optimal medical therapy, recommended he cease smoking, and recommended he be considered for revascularization. The VA physicians also noted that Crow had a preexisting cerebral aneurysm, a co-morbidity that needed to be cleared prior to being considered for revascularization.

Because the VA did not have a neurosurgeon on staff, the VA arranged to pay for Mr. Crow to consult with a non-VA provider. Crow arranged to visit Dr. Nabil

Muhanna, a private non-VA physician, and saw Muhanna on June 4, 2013. However, the only records of Dr. Muhanna's visit that appear in Mr. Crow's VA medical records are dated June 3, 2014, nearly one year later, when Dr. Muhanna submitted a request for payment.

On June 10, 2013, Mr. Crow's primary care physician sent him a letter reminding Crow that he still needed to see a neurosurgeon, and asked him to contact the VA if he was having any trouble doing so. There is no evidence that Mr. Crow responded to this letter or contacted the VA at all after June 10, 2013. On September 23, 2013, Mr. Crow died. No autopsy was performed.

Though there was a physician-patient relationship between Mr. Crow and Drs. Toennes and Block, Plaintiff will be unable to prove any breach of the standard of care. Even if Plaintiff can establish a breach of the standard of care, she cannot prove this breach caused Mr. Crow's death. In addition, the intervening third-party negligence of Dr. Muhanna eliminates or reduces any liability on the part of the VA. Finally, Mr. Crow's negligence in failing to respond to Dr. Streleckis' letter or to follow-up on his own care from June 2013 until September 2013 eliminates or reduces any liability on the part of the VA.

### Legal Standards Applicable to Defendant's Case

28 U.S.C. §§ 1346(b) & 2671-2680

O.C.G.A. § 51-1-27: Malpractice of Surgery or Medicine

    O.C.G.A. § 51-11-7:   Diligence of Plaintiff

    O.C.G.A. § 51-12-2:   General Damages and Special Damages Defined

    O.C.G.A. § 51-12-3:   Direct and Consequential Damages Defined

    O.C.G.A. § 51-12-4:   Compensation for Injury. Nominal Damages

    O.C.G.A. § 51-12-8:   Rule to Ascertain Remoteness

    O.C.G.A. § 51-12-11:   Plaintiff Bound to Lessen Damages

    O.C.G.A. § 51-12-33:   Reduction and Apportionment of Award or Bar of Recovery According to Percentage of Fault of Parties and Nonparties

This case is governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680, which is a waiver of sovereign immunity that allows a tort action to be brought against the United States to the same extent that it would lie against a private person under the substantive law of the state in which the cause of action allegedly occurred. The FTCA does not authorize tort claims asserting violation of constitutional rights, and does not authorize suit where a private person would not be liable.

The substantive law of Georgia imposes on each plaintiff asserting a tort claim the burden of proving (1) a legal duty to conform to a standard of conduct, (2) a breach of that duty, (3) a legally recognized causal connection between the conduct and the resulting injury, and (4) loss or damage resulting from the alleged breach of duty. Gallant v. United States, 709 F.2d 706, 708-09 (11th Cir. 1983) reh'g. denied

716 F.2d 914, cert. denied, 465 U.S. 1024, 104 S.Ct. 1279. Judgment will be entered for the Defendant when the Plaintiff fails to prove each of these individual elements by a preponderance of the evidence. Id.

Bowling v. Foster, 254 Ga. App. 374, 376-77 (2002) (In order to establish a prima facie claim of medical malpractice under Georgia law, Plaintiff must prove: (1) the duty inherent in the doctor-patient relationship; (2) a breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that the failure was the proximate cause of the injury sustained).

When attempting to define the standard of care in a medical malpractice case, courts have looked to guidelines issued by medical experts within the field in question. See, e.g., Gerace v. U.S., 272 Fed. Appx. 6, 9 (2nd Cir. 2008); Woods v. U.S., 200 Fed.Appx. 848, 857 (11th Cir. 2006); Madrigal v. Mendoza, 639 F.Supp.2d 1026, 1032 (D. Ariz. 2009).

Zwiren v. Thompson, 276 Ga. 498, 500 (2003) ("In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson.")

EHCA Dunwoody, LLC v. Daniel, 277 Ga. App. 783, 785 (2006) ("To recover in a medical malpractice action, a claimant must show by a preponderance of the

evidence that the defendant's negligence 'either proximately caused or contributed to cause [the claimant] harm.' Because this issue generally is beyond the ken of the average juror, the claimant must present expert testimony to prove causation. And the expert must offer the jury a realistic assessment of the likelihood that the defendant's negligence caused the injury.").

MCG Health, Inc. v. Barton, 285 Ga.App. 577, 582 (2007) (the expert must testify to a reasonable degree of medical certainty or probability regarding causation). See also Bowling v. Foster, 254 Ga. App. 374, 378 (2002).

Wilson v. Muhuanna, 213 Ga. App. 704 (1994) (there is a presumption that medical services provided were skillfully performed.

Wall v. Brim, 138 F.2d 478, 480 (5th Cir. 1943) (a physician does not guarantee the result of a treatment or operation).

Hawkins v. OB-GYN Associates, P.A., 290 Ga. App. 892, 894 (2008) (plaintiff must establish more than just a different outcome that the expected outcome).

Unless the plaintiff introduces affirmative proof of negligence, the presumption is that the defendant breached no duty, and is instead free from negligence. Innes v. Dixie Service Center, 481 S.E.2d 572, 574 (Ga. App. 1997). Likewise, the innocence of the plaintiff is not evidence of the defendant's negligence. City of Douglasville v. Queen, 514 S.E.2d 195, 197-198 (Ga. 1999).

A person must use all of his senses in a reasonable manner to discover and avoid things that may cause him harm. A plaintiff cannot recover if he could have avoided injuries to himself by the exercise of ordinary care. Lowery's Taven, Inc. v. Dudukovich, 507 S.E.2d 851, 854 (Ga. App. 1998).

Osburn v. Pilgrim, 246 Ga. 688, 273 S.E.2d 118 (1980) (rule of "avoidable consequences" denies recovery for any damages which could have been avoided by reasonable conduct on the part of the plaintiff).

Georgia is a comparative negligence state. Thus, where there is negligence by both parties which is concurrent and contributes to the injury sued for, a recovery by the plaintiff is not barred, but his damages shall be diminished by an amount proportioned to the amount of fault attributable to him, provided (1) that his fault is less than the defendant's fault, and (2) that, by the exercise of ordinary care, he could not have avoided the consequences of the defendant's negligence after it became apparent or in the exercise of ordinary care should have been discovered by the plaintiff. Rogers v. McKinley, 48 Ga. App. 262, 172 S.E. 662 (1934); Georgia Power Co. v. Maxwell, 52 Ga. App. 430, 183 S.E. 654 (1936). The application of Georgia's law was explained by the federal court in the Southern District of Georgia: "Comparative negligence doctrine denies any recovery if plaintiff's negligence equals or exceeds defendant's. Damages are proportionately reduced where the latter's fault exceeds that of the plaintiff. Thus, if each party is 50 percent at fault,

there can be no recovery. But should plaintiff's negligence be 49 percent, he is entitled to recover 51 percent of his damages." Southern Ry. v. Brunswick Pulp & Paper Co., 376 F. Supp. 96 (S.D. Ga. 1974); accord Bridges Farms v. Blue, 480 S.E.2d 598 (Ga. 1997).

Georgia has eliminated joint and several liability and instead requires that "[d]amages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution" and that "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." O.C.G.A. § 51-12-33; see also City of Kingsland v. Grantham, 805 S.E.2d 116, 118 (Ga. App. 2017) (discussing "Georgia's abolishment of joint and several liability through the enactment of the apportionment statute, OCGA § 51–12–33 (b)").